[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10153

_____

JAMES E. MCNAIR,

Plaintiff-Appellant,

*versus*

K. JOHNSON,
Nurse Practitioner,

Defendant- Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:23-cv-00505-MW-MAF

_____

Before NEWSOM, BRASHER, and WILSON, Circuit Judges.

NEWSOM, Circuit Judge:

James McNair, a Florida prisoner who was once pro se but is counseled on appeal, contests the district court's without-prejudice dismissal of his civil-rights action as "malicious" under the Prison Litigation Reform Act. McNair insists that his failure to disclose two prior cases in the litigation-history section of a standardized prisoner-complaint form didn't render his action "malicious" within the meaning of the PLRA's operative provisions. Even if McNair is right about that, we affirm the district court's decision on the ground that it had the inherent authority to manage its docket and sanction McNair's violation of court rules by dismissing his suit without prejudice.

## I

### A

Proceeding pro se in the Northern District of Florida, James McNair sued Kim Johnson, a nurse practitioner at Liberty Correctional Institute, where McNair was incarcerated, alleging deliberate indifference to his medical needs in violation of the Eighth Amendment. McNair filed his action under 42 U.S.C. § 1983 and submitted the Northern District's standardized "Civil Rights Complaint Form for Pro Se Litigants." Compl. Form at 1, Dkt. No. 1. As relevant here, the form required any would-be plaintiff to identify his "prior litigation." In particular, it explained that the "failure to disclose all prior state and federal cases—including, but not

limited to civil cases, habeas cases, and appeals—may result in the dismissal of this case," and advised the plaintiff to "err on the side of caution if [he was] uncertain whether a case should be identified." *Id.* at 13. McNair listed six cases on the form and certified under penalty of perjury that the information he provided was true and correct.

## B

Pursuant to the Prison Litigation Reform Act, a magistrate judge screened McNair's case to determine whether it warranted dismissal on the ground that his "complaint" was "frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted," or "s[ought] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)–(b). Having done so, the judge recommended dismissal under § 1915(e)(2)(B), which, as relevant here, states that a court "shall dismiss the case at any time if the court determines that . . . the action . . . is . . . malicious." *Id.* § 1915(e)(2)(B)(i). The magistrate judge found that McNair had "affirmatively misrepresented his federal litigation history under the penalty of perjury" by failing to disclose two prior habeas-related cases. R. & R. at 6–8, Dkt. No. 9. In particular, the magistrate judge noted the absence of two cases from the Middle District of Florida: (1) McNair's initial petition for habeas corpus relief in Case No. 5:10-cv-00638-MSS-PRL; and (2) his motion for reconsideration of the denial of a request for a certificate of appealability in Case No. 5:21-cv-82-SPC-PRL. The magistrate judge deemed these omissions "false responses" because McNair "knew that accurate disclosure of his litigation history [was] required." *Id.* at 5, 7.

In his report and recommendation, the magistrate judge emphasized the importance of penalizing untruthful responses: "[I]f word spread around the prisons that the questions on the complaint form could be circumvented in such a manner, the court might be confronted with widespread abuse from its many prisoner litigants." *Id*. at 7. The magistrate judge concluded that dismissal was "[a]n appropriate sanction for [McNair's] abuse of the judicial process in not providing the court with true factual statements or responses." *Id*. (first citing *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998); and then citing *Jackson v. Fla. Dep't of Corr.*, 491 F. App'x 129, 132–33 (11th Cir. 2012)).

As relevant here, McNair objected to the R&R on two grounds. With respect to the first omission, he stated that although he failed to list his initial habeas petition in Case No. 5:10-cv-00638-MSS-PRL, he disclosed the subsequent petition in that case, which bore the same docket number. And with respect to the second, he contended that he wasn't required to disclose the motion for reconsideration of the denial of a COA because it didn't challenge his conviction. In any event, McNair requested leave to amend his complaint to include the missing cases and correct other minor errors.

Without conducting a hearing, the district court adopted the R&R and dismissed McNair's action without prejudice on the ground that it was "malicious" within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i). The district court found that McNair "affirmatively misrepresented" his litigation history by omitting the two

cases, even though it recognized that both omissions "f[e]ll below th[e] materiality standard, as neither of his omitted cases seem to bear on his present [] § 1983 claims." Order Accepting R. & R. at 3 & n.1, Dkt. No 11.

This is McNair's appeal.

## II

Before diving into the merits, we provide a bit of background, as the parties' briefing reflects what seems to us some underlying confusion. As particularly relevant here, there are two sources of authority pursuant to which a district court may dismiss a prisoner's civil-rights suit—(1) the Prison Litigation Reform Act and (2) the court's inherent authority. We examine each in turn.

## A

We begin with the Act. "[I]n the wake of a sharp rise in prisoner litigation in the federal courts," *Woodford v. Ngo*, 548 U.S. 81, 84 (2006), Congress enacted the PLRA in an effort "to cabin not only abusive but also simply meritless prisoner suits," *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1726 (2020). The PLRA's reforms sought to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The statute accordingly creates several mechanisms by which courts can "filter out the bad claims and facilitate [the] consideration of the good" ones. *Jones v. Bock*, 549 U.S. 199, 204 (2007); *see also White v. Lemma*, 947 F.3d 1373, 1376 (11th Cir. 2020).

*First*, the PLRA requires district courts to conduct an early screening of cases filed by inmates against government entities and officers. 28 U.S.C. § 1915A(a); *see also Jones*, 549 U.S. at 202. Before or shortly after docketing, a court "shall" review a prisoner's case to determine whether the "complaint" is "frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)–(b). If the court concludes that any of these conditions applies, it "shall . . . dismiss the complaint, or any portion of" it. *Id.* § 1915A(b).

*Second*, the Act regulates the conditions under which indigent prisoners may proceed in forma pauperis. *See* 28 U.S.C. § 1915. IFP status "'is designed to ensure that indigent litigants have meaningful access to the federal courts.'" *Wells v. Brown*, 58 F.4th 1347, 1355 (11th Cir. 2023) (en banc) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). But in the PLRA, "Congress recognized that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits"—and, indeed, that district courts had been "flooded with prisoner complaints," many of which "had no merit [or] were frivolous." *Id.* at 1355 (citation modified). To address that problem, the PLRA requires sua sponte dismissal of an indigent inmate's suit if *either* "the allegation of poverty is untrue" *or* (echoing the screening provision) the "action" "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A)–(B).

*Finally*, the PLRA includes a "three strikes" provision, which denies a prisoner the privilege of proceeding IFP if he has previously brought at least three "action[s]" or "appeal[s]" in federal court while incarcerated that were dismissed as "frivolous, malicious, or fail[ing] to state a claim." *Id.* § 1915(g)[1]; *see also Daker v. Comm'r, Ga. Dep't of Corr.*, 820 F.3d 1278, 1281, 1283–84 (11th Cir. 2016) (stating that these are the "*only* grounds that can render a dismissal a strike"). A prisoner who has three such "strikes" must pay the full filing fee to proceed, which may impede his ability to access the courts. *See Lomax*, 140 S. Ct. at 1723. This sanction reflects Congress's decision to limit "attempt[s] to obtain a 'short sabbatical in the nearest federal courthouse' . . . or to harass prison officials" by "abusive[ly]" exploiting IFP status. *Mitchell v. Farcass*, 112 F.3d 1483, 1488–89 (11th Cir. 1997) (quoting *Cruz v. Beto*, 405 U.S. 319, 327 (1972) (Rehnquist, J., dissenting)); *see also Wells*, 58 F.4th at 1355 ("By taking away the privilege of proceeding in forma pauperis from prisoners who have struck out, the rule is 'designed to filter out the bad claims and facilitate consideration of the good.'" (quoting *Jones*, 549 U.S. at 204)).

Importantly here, to aid in the enforcement of the PLRA's limitations, some district courts require an inmate plaintiff to

---

[1] An exception exists for prisoners who are "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

disclose his litigation history on a standardized form filed alongside his complaint and signed under the penalty of perjury. Some such forms, like those utilized in the Northern District of Florida, require the disclosure of an inmate's entire litigation history—including cases that might not count as PLRA strikes. The Act itself doesn't require such forms—or the disclosure of litigation history more generally—and so, unsurprisingly, it doesn't speak to the consequences of a prisoner's failure to complete his form accurately.

## B

Separate and apart from the PLRA, a district court may also dismiss a case under its "inherent authority," which it possesses as a means of "manag[ing] its own docket 'so as to achieve the orderly and expeditious disposition of cases.'" *Equity Lifestyle Props., Inc. v. Fla. Mowing and Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991)). "The court's power to dismiss [a case] is an inherent aspect of its authority to enforce its orders and ensure prompt disposition of lawsuits." *Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983) (per curiam). But "[b]ecause of their [] potency," a district court's "inherent powers must be exercised with restraint and discretion." *NASCO*, 501 U.S. at 44.

A dismissal can be either with or without prejudice to refiling. A district court may use the "extreme sanction" of sua sponte dismissing a case *with* prejudice pursuant to its inherent authority only when "'(1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court

specifically finds that lesser sanctions would not suffice.'" *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337–38 (11th Cir. 2005) (quoting *World Thrust Films, Inc. v. Int'l Fam. Ent., Inc.*, 41 F.3d 1454, 1456 (11th Cir. 1995)). While the "outright dismissal of a lawsuit . . . is a particularly severe sanction," the Supreme Court has recognized that it's "within the court's discretion." *NASCO*, 501 U.S. at 45. A dismissal *without* prejudice, by contrast, doesn't require a finding of willfulness or bad faith because its consequences are less severe. A district court will rarely be found to have abused its discretion in dismissing without prejudice because the plaintiff is ordinarily permitted to simply refile. *See Dynes v. Army Air Force Exch. Serv.*, 720 F.2d 1495, 1499 (11th Cir. 1983).

### III

The parties' briefing here has focused on the PLRA, but Nurse Johnson and the state contend that we can affirm the district court's judgment on an alternative ground—namely, that the court had inherent authority to dismiss McNair's complaint without prejudice as a sanction for his failure to disclose his full litigation history as required by the standard inmate complaint form. *See, e.g., Statton v. Fla. Fed. Jud. Nominating Comm'n*, 959 F.3d 1061, 1065 (11th Cir. 2020) ("We may affirm the judgment below on any ground supported by the record, regardless of whether it was relied on by the district court."). For reasons we will explain, we agree.[2]

---

[2] Accordingly, we do not reach the other alternate grounds for affirmance, including Federal Rules of Civil Procedure 11 or 41. Nor do we reach the question whether the district court's dismissal should be counted as a § 1915(g)

"We review the district court's decision to dismiss a case for failure to comply with the rules of the court for an abuse of discretion." *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006). An abuse of discretion occurs where the district court "applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). As already noted, a dismissal without prejudice generally will not be deemed to constitute an abuse of discretion. *See Dynes*, 720 F.2d at 1499.

Although a pro se litigant's filings are construed liberally, they must comply with procedural rules. *See, e.g.*, *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[A] *pro se* IFP litigant . . . is subject to the relevant law and rules of court . . . ."). "A district court has discretion to adopt local rules that are necessary to carry out the conduct of its business." *Frazier v. Heebe*, 482 U.S. 641, 645 (1987); *see also* 28 U.S.C. § 2071; Fed. R. Civ. P. 83(a). "[L]ocal rules generally reflect the courts' traditional 'authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Reese v. Herbert*, 527 F.3d 1253, 1267–68 (11th Cir. 2008) (quoting *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 172–73 (1989)). These rules "are effective 'unless modified or abrogated by the judicial

---

"strike" in any future litigation. *Cf. Gonzalez v. United States*, 23 F.4th 788, 791 (8th Cir. 2022) (explaining that the authority to determine whether an inmate's suit counts as a "strike" rests with the court ultimately faced with deciding whether he has run afoul of § 1915(g)'s three-strikes provision).

24-10153            Opinion of the Court                 11

council of the relevant circuit.'" *Brown v. Crawford Cnty.*, 960 F.2d 1002, 1009 n.10 (11th Cir. 1992) (quoting 28 U.S.C. § 2071(c)(1)).

Here, the pertinent rules are those adopted by the United States District Court of the Northern District of Florida, where McNair filed his action.[3] Local Rule 5.7(A) instructs a pro se prisoner bringing suit under § 1983 to use the court's standardized civil-rights complaint form:

> A party not represented by an attorney must file any of these only on a form available without charge from the Clerk or on the District's website: a petition for a writ of habeas corpus, a motion for relief under 28 U.S.C. § 2255, or a complaint in a civil-rights case. A case is a civil-rights case if it asserts a claim under the United States Constitution or a statute creating individual rights, including, for example, 42 U.S.C. § 1983 or the Civil Rights Act of 1964. The Court need not—and ordinarily will not—consider a petition, motion, or complaint that is not filed on the proper form.

---

[3] The Northern District's local rules were promulgated in accordance with all applicable procedural requirements and thus carry the force of law. *See* Fed. R. Civ. P. 83; 28 U.S.C. § 2071(b); N.D. Fla. R. at 2–3 ("Following the procedures outlined in Title 28, United States Code, Section 2071; Rule 83, Federal Rules of Civil Procedure; and Rule 57, Federal Rules of Criminal Procedure, the judges of this court do unanimously adopt the appended Local Rules. The appended rules shall, within their scope, govern all proceedings in the Northern District of Florida effective November 24, 2015.").

12                    Opinion of the Court                    24-10153

N.D. Fla. R. 5.7(A).

The complaint form, in turn, instructs the inmate to disclose his litigation history.  In particular, under a heading titled "PRIOR LITIGATION," the form provides the following directive:

> This section requires you to identify your prior litiga-
> tion history.  Be advised that failure to disclose all
> prior state and federal cases—including, but not lim-
> ited to civil cases, habeas cases, and appeals—may re-
> sult in the dismissal of this case.  You should err on
> the side of caution if you are uncertain whether a case
> should be identified.

Compl. Form at 8.  The form goes on to state that the inmate should "[a]ttach additional pages as necessary to list all cases."  *Id*. at 12.  Separately, the form requires the inmate to provide the following "CERTIFICATION":

> I declare, under penalty of perjury, that all of the in-
> formation stated above and included on or with this
> form, including my litigation history, is true and cor-
> rect.

*Id*.

Importantly here, Local Rule 41.1 describes the conse-quences of a litigant's failure to comply with the applicable court rules, and it expressly warns that dismissal is a possible sanction:

> If a party fails to comply with an applicable rule or a
> court order, the Court may strike a pleading, dismiss
> a claim, enter a default on a claim, take other

appropriate action, or issue an order to show cause why any of these actions should not be taken.

N.D. Fla. R. 41.1.

So, putting the pieces together, McNair was required to complete the standardized civil-rights complaint form, which he did. But he was also required to complete the form according to its instructions, which he did not. In describing his litigation history, although McNair used the six available spaces to list his previous cases, he didn't attach additional pages "as necessary to list all cases" and thus omitted the two proceedings cited by the magistrate judge. The complaint form clearly stated that the "failure to disclose all prior state and federal cases"—specifically enumerating "habeas cases[] and appeals"—"may result in the dismissal of this case." Compl. Form at 8. And the local rules likewise warn that the failure to follow an applicable rule is a ground for "dismiss[al] [of] a claim." N.D. Fla. R. 41.1.

The bottom line: Dismissal without prejudice was an appropriate exercise of the district court's inherent authority to manage its docket and enforce the local rules. McNair violated the local rules by failing to disclose his full litigation history, as required by the duly adopted standard complaint form. We hold that the district court did not abuse its considerable discretion when it dismissed McNair's suit for failure to comply with the complaint form's explicit instructions. That is so "even if we would have gone

the other way had the choice been ours to make." *United States v. Campbell*, 491 F.3d 1306, 1310 (11th Cir. 2007) (citation modified).[4]

## IV

The record supports the district court's dismissal without prejudice of McNair's § 1983 suit under its inherent authority to manage its docket and enforce applicable local rules. Accordingly, we affirm the district court's judgment.

**AFFIRMED.**

---

[4] One final thing: Citing the Seventh Circuit's decision in *Greyer v. Illinois Department of Corrections*, 933 F.3d 871 (7th Cir. 2019), McNair urges us to adopt, as part of our inherent-authority analysis, the requirements that a failure to disclose litigation history be both intentional and material. *Greyer*, though, is inapposite—that case involved the considerably more draconian sanction of dismissal *with* prejudice for committing a "fraud on the court." *Id.* at 876. A dismissal with prejudice "go[es] to the merits of the case." *Versa Prods., Inc. v. Home Depot, USA, Inc.*, 387 F.3d 1325, 1327 (11th Cir. 2004) (citation modified). Here, the district court imposed the far more modest sanction of dismissal without prejudice, which has no bearing on the merits. *Id.* Accordingly, a dismissal without prejudice doesn't depend on a finding of bad faith, and can follow from unintentional or merely negligent conduct. Adopting the *Greyer* standard here would improperly superimpose the high burdens for *with*-prejudice dismissals on *without*-prejudice dismissals, thereby eliding important distinctions between the two.

24-10153                Newsom, J., Concurring                1

NEWSOM, Circuit Judge, concurring:

I write separately to make one simple (and maybe persnickety) point:  As the Court's opinion makes clear, although this case is easily resolved on "inherent authority" grounds, the parties have spent the lion's share of their time tangling over whether McNair's failure to include two habeas-related cases on his standardized civil-complaint form was "malicious" within the meaning of the Prison Litigation Reform Act's operative provisions.  With respect, at least as far as the statute is concerned, that's the wrong question.

Three provisions of the PLRA address "malicious" prisoner litigation.  First, the Act requires a district court to screen any case filed by an inmate against a government defendant and to dismiss it if the "complaint" is "malicious."  28 U.S.C. § 1915A(a)–(b).  Second, it requires a district court to dismiss an indigent inmate's suit if, as relevant here, the "action" is "malicious."  Id. § 1915(e)(2)(B)(i).  And finally, the Act contains a "three strikes" provision that denies a prisoner the right to proceed in forma pauperis if he has previously filed—again, as relevant here—at least three "action[s]" that were dismissed as "malicious."  Id. § 1915(g).

These three subsections share an obvious throughline:  The object of the maliciousness inquiry—i.e., the thing that must be "malicious" in order to trigger the Act's remedial provisions—is the inmate's "complaint" or "action."  Here, the parties have overwhelmingly—perhaps even invariably—focused on the wrong object, debating whether McNair's failure to fully disclose his litigation history on the stock form was "malicious."

To be sure, there may well be instances in which a prisoner's failure to list past cases on a standard form suggests that his "complaint" or "action" is itself "malicious." For instance, if an inmate neglects to disclose that he had previously filed a materially identical lawsuit—such that the current case is truly duplicative—that might be pretty good evidence that his "complaint" or "action" is "malicious." *Cf. Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998), *abrogated in part on different grounds by Jones v. Bock*, 549 U.S. 199 (2007). But not every stock-form omission will have any real bearing on the action's (or complaint's) maliciousness. As the district court here acknowledged, for instance, the two habeas-related cases that McNair failed to disclose had no relevance to the merits of his § 1983 suit, *see* Order Accepting R. & R. at 3 & n.1, Dkt. No. 11, so it's not clear to me why their omission says much of anything about the maliciousness of his action (or complaint).

I take the State's point, of course, that accurate disclosure of an inmate's litigation history facilitates the PLRA's screening and three-strikes provisions. My rejoinder—which finds support in analogous Supreme Court precedent—is simply that we must take the Act as we find it, and, for better or worse, it provides for dismissal of a prisoner's case only where his "complaint" or "action" is *itself* "malicious"—not where some other (even related) conduct might be. *Cf. Jones*, 549 U.S. at 202–03 (rejecting as "not required by the PLRA" a court-created rule requiring inmates to affirmatively demonstrate in their complaints that they had exhausted prison

24-10153                Newsom, J., Concurring                3

remedies, despite the fact that it might "facilitate early judicial screening" under the Act).[1]

---

[1] And of course, as the main opinion's discussion of inherent authority makes clear, district courts have other tools at their disposal to address prisoners' litigation misconduct, whether the result of bad faith or otherwise. *See* Maj. Op. at 8–9; *see also, e.g.*, Fed. R. Civ. P. 11, 41.

24-10153                 Brasher, J., Concurring                 1

BRASHER, Circuit Judge, concurring:

I concur in full. I write separately to address why I believe we are correct not to review the district court's declaration that its dismissal of McNair's lawsuit was a "strike" under the Prisoner Litigation Reform Act.

The district court dismissed McNair's lawsuit without prejudice to being refiled. But, instead of refiling, McNair appealed. According to his counsel at oral argument, McNair chose to appeal in large part because the district court declared that its dismissal would count as a "strike" in any future lawsuit that McNair filed. Under the PLRA, a prisoner cannot litigate *in forma pauperis* if, "on 3 or more prior occasions," a court dismissed a previous lawsuit he filed as frivolous, malicious, or for failure to state a claim. 28 U.S.C. §§ 1915(g), 1915A. It was, therefore, important to McNair that we address whether the district court properly labeled this dismissal as a PLRA "strike." But, because we affirm the dismissal based on the district court's inherent authority, our opinion doesn't answer the "strike" question one way or another. Maj. Op. at 9 n.2.

McNair may be disappointed that we did not address the district court's "strike" declaration. But, because we'd have to affirm the dismissal on other grounds no matter what we thought about the PLRA, I don't think this issue is properly before us.

First, it's not ripe. The PLRA's three-strike penalty is triggered only when a new complaint is filed after a third dismissal. Although three strikes have serious consequences for a prisoner-litigator, a single strike has none. The upshot is that the question

2                    Brasher, J., Concurring                    24-10153

whether a dismissal counts as a "strike" under the PLRA is ripe for appellate review only when a district court denies a prisoner IFP status as a PLRA sanction. And we routinely review the question in that procedural posture. *See Wells v. Brown*, 58 F.4th 1347, 1350 (11th Cir. 2023) (en banc); *Daker v. Jackson*, 942 F.3d 1252, 1256–57 (11th Cir. 2019); *Daker v. Comm'r, Georgia Dep't of Corr.,* 820 F.3d 1278, 1283 (11th Cir. 2016); *Rivera v. Allin*, 144 F.3d 726, 730-32 (11th Cir. 1998).

Because McNair has not been denied IFP status, it is premature to assess whether this dismissal counts as a strike under the PLRA. *See Gonzalez v. United States*, 23 F.4th 788, 791 (8th Cir. 2022) (no jurisdiction over appeal that challenged only strike designation, not underlying dismissal); *Pitts v. South Carolina*, 65 F.4th 141, 150 (4th Cir. 2023) (Richardson, J., dissenting) (same). The district court's designation of this dismissal as a "strike" may never affect McNair. Right now, based on his representations, McNair has *maybe* one strike. We don't know whether he will ever file another complaint, how many he may file, whether those complaints will be dismissed, what the reasons for dismissal may be, or how future district courts will assess his litigation history. "The bottom line is that the district court's statement will only make a difference, if at all, once [McNair] has passed the three-filings threshold, and even then, only if all three were dismissed. Then, and only then, will the number of strikes be ripe for adjudication." *Gonzalez*, 23 F.4th at 791 (citation omitted).

24-10153                Brasher, J., Concurring                3

Second, the district court's strike declaration doesn't control this issue going forward. The district court's statement isn't binding on any future judge—trial or appellate—if McNair's IFP status is ever threatened. "[T]he task of counting strikes involves more than sophomoric arithmetic." *Rivera*, 144 F.3d at 726. Instead, when asked to apply the three-strikes sanction, a court must determine for itself "whether the reason for the [three prior] dismissals were frivolousness, maliciousness or failure to state a claim upon which relief may be granted." *Id.*

To be clear, it may be wise for a district court to include this kind of forward-looking "strike" statement in a dismissal order. A district judge's contemporaneous declaration that a dismissal should count as a "strike" may be helpful for a future strike-counting judge. It may also help the clerk's office keep track of frequent filers who are at risk of losing IFP privileges. But it obviously doesn't control what a future judge does. After all, "a district court's decisions do not bind other district courts, other judges on the same court, or even the same judge in another case." *Georgia v. President of the United States*, 46 F.4th 1283, 1304 (11th Cir. 2022).

I also don't think our court could definitively resolve this issue for a future court, even if we wanted to. Consider the posture of this case. The district court said that its dismissal counts as a strike under our precedent in *Rivera*, but it also said that it would *not* count as a strike under the caselaw of other circuits. *See* Doc. 11 at 3 n.1 (citing *Greyer v. Illinois Dep't of Corr.*, 933 F.3d 871, 880 (7th Cir. 2019)). Judge Newsom's concurring opinion disagrees

with the district court's reading of *Rivera*. But let's assume the district court was right. We don't know what the state of the law will be at the hypothetical future point when McNair gets his two additional strikes, files his fourth lawsuit, and is denied IFP. The Supreme Court could have adopted another circuit's approach by then. Or we could have overruled *Rivera* en banc. (It's happened before. *See Wells*, 58 F.4th at 1350.) Any ruling we made on this issue now would be a prediction or guess about how we would rule if the issue arose in the future—nothing more.

In short, although McNair apparently pursued this appeal to resolve the "strike" issue, we are constrained to disappoint him. He should take solace in knowing that the district court's strike declaration is not binding on any judges who may have to evaluate his IFP status in the future. And he can appeal anew if a district court in the future denies him IFP status based on the dismissal in this case.